Good morning. May it please the Court, I am Rob Andrus. I am here on behalf of the Plaintiff and the Appellant. In this case, I'd like to reserve five minutes. I hope I won't use all ten. Okay. Beginning with the malicious prosecution cause of action and the choice of law question, it is submitted to the Court that the only interest that Ohio had in the underlying litigation was the fact that one of its residents was one of the two plaintiffs in that underlying action and that this federal patent lawsuit had been filed in the district court in Ohio. And that's where the similarities really end with respect to this case and the Engle case, which is also a malicious prosecution case. Engle was a breach of contract case, and the contract that was at issue in the underlying litigation specifically said that New York law was to apply to any disputes arising out of the breach of that contract. Now, this Court, when it analyzed that situation and the fact that the underlying action did take place in New York, said that while the two states' interests on the balance in the test for conflicts of law started off a little bit in California's favor because that's where the malicious prosecution case was filed and every state has an interest in enforcing its laws, that the fact that the California resident, the plaintiff in that malicious prosecution action, had signed a contract with this choice of law provision in it severely diminished California's interest. And under those facts, New York had a higher interest than California did. It's submitted here, Your Honor, that we're not dealing with a breach of contract cause of action. We're dealing with an intentional tort as being the underlying case. We were being charged with patent infringement. We were being charged with willful infringement. They were seeking attorney's fees, and they directed that conduct at this California resident. And then, you know, going to the favorable termination aspect of the case, after going all the way through to the end of the discovery, on the very last day to file motions, they dismiss this prejudice against us and give us a life with a patent license to practice that patent. Going back to the choice of law, the nature of the underlying action, the fact that it could have been filed anywhere, really, in the United States, that Ohio was really just a fortuitous forum for the underlying case, and the fact that this tort, this tortious conduct was directed specifically at a California resident, in our estimation, Your Honor, gives California that greater interest and its laws would be more impaired than the laws of Ohio. Mr. Andrews, don't we first have to decide whether or not this claim should have been raised as a compulsory counterclaim? A malicious prosecution? Yeah. That argument was made with respect to abuse of process and antitrust. And the antitrust case. So I guess. A malicious prosecution claim doesn't ripen until there's a favorable termination of the underlying case. Right. Okay. That issue doesn't necessarily. Let's suppose that we undertake the choice of law analysis and we conclude that Ohio law should apply. Okay. Would you tell us how you could meet prong four of Ohio malicious prosecution law, which requires seizure of plaintiff's person or property during the course of the prior proceedings? Yeah. And if seizure is interpreted as seizure of some sort of physical property, be it real property or something else, then no, that did not occur in the underlying case. Okay. So if we conclude that Ohio law does apply, it sounds like it would be futile to try to amend your malicious prosecution claim. Your Honor, as I stand before you, I recall that there were cases out there where arguments were made that if bank accounts had been seized or something along that line, it could constitute a seizure of property, and this is under Ohio law. Bank accounts weren't seized in this case. Okay. But I haven't done exhaustive research down that line, but it appears to be so. Appreciate your time. Okay. With respect to. What if California law applies? Analyze that for us. All right. If California law applies, malicious prosecution claim, then what? Well, then the next question is, and it's the one that was actually raised or relied on by the district court, and that's the question of whether the underlying action was favorably terminated in favor of the defendant, the plaintiff in this malicious prosecution claim. And we would submit, Judge Hugg, that it was, that a dismissal with prejudice in favor of my client was, did reflect on whether or not the claim was viable at the if they took it forward. That's the test under California law, and the courts of squarely come down and said that, yes, a dismissal with prejudice does constitute a favorable termination. And so if the court agrees with that. Is there some authority that that's a jury question in California? There is some authority cited in our brief, which talks about that as being a question of fact for the jury under certain circumstances. There are a number of cases as well that have reached that issue as a matter of law and just looking at the facts pled in the complaint. Moving on to the favorable or to the. The question that was raised earlier with respect to whether the case, whether the antitrust or the abuse of process claims were compulsory counterclaims. This court has said that antitrust or antitrust claims arising out of patent litigation, especially when those antitrust claims arise out of claims that the underlying case is sham litigation, objectively meritless at the outset, that that is a permissive counterclaim. And under the Sixth District test for whether or not it's compulsory, that is the logical relationship test. And, again, it's our position that this particular form of antitrust, the prosecution of an invalid or a known invalid patent, doesn't write until the defendant should have some knowledge or should be charged with some knowledge that gives them enough proof to move forward with that cause of action. In this case, the fraud on the patent office and the fact that the patent was invalid didn't come to light until during the course of discovery, and we were taking the inventor's depositions and other witnesses' depositions. And, therefore, we would submit, again, that this claim of antitrust and the abuse of process claim are permissive counterclaims and that they should have been allowed to go forward. After discovery closed, was this the sequence, discovery closed and then your client moved for summary judgment? That's correct, Your Honor. And was there a response to the motion or was the case dismissed at that point? Well, at that point in time, there, on the same day and perhaps shortly before or shortly after, the motion to dismiss was filed separately by the plaintiff. I believe that an opposition was filed to the summary judgment motion. I know we filed an opposition to the motion to dismiss. The Court ruled on the motion to dismiss and then ruled that the summary judgment motion was moved. Okay. You wanted to save about five minutes and you're just about at it. That's correct. So I would end it at this point, Your Honor. Thank you. Thanks for coming down this morning. I appreciate your argument. Mr. LeVere? Yes, Your Honor. May it please the Court. Earl LeVere. Initially, I have a, just sort of a housekeeping question. This case also presents a cross-appeal, and I'm uncertain whether the Ninth Circuit's practice is to allow rebuttal by a cross-appellant. And if so, I'd like to reserve a minute for rebuttal. If that's not typically how it's handled here, I'll certainly do my best to make my argument completely. Let's see what your opponent does in normal rebuttal, and if he raises the issue, then we'll allow you to respond. Great. Thank you, Your Honor. Okay. And, Judge, to your question about whether there was a response to the summary judgment motion, my delay in coming to the podium was to check the Court's docket, which is in the record, and unfortunately, I could only find the beginning of the page and didn't have a chance to skim through to find the rest. My recollection, though, and I have to confess, I wasn't trial counsel in the Ohio action, but my recollection is that there was a response, that the issue was briefed and that the pending motion for summary judgment and the motion to dismiss sat on the Court's docket in Ohio for roughly a year before the case was finally decided. And in response to the motion to dismiss with prejudice, Destiny filed or asked for several types of relief, including the opportunity to amend its complaint, to assert new claims that could stand on their own, as opposed to the declaratory judgment claim, which was the only counterclaim they had asserted so far. They also asked for attorneys' fees and for a ruling that they were a prevailing party, which would allow them to recover the attorneys' fees, all of that in addition to opposing the motion to dismiss with prejudice. And Judge Polster in Ohio denied all of that relief. Judge Polster denied leave to amend, granted the motion to dismiss with prejudice over Destiny's objection, and denied the request for attorneys' fees, specifically finding that Destiny was not a prevailing party. And that's the language in the order. Destiny is not a prevailing party, and so we cannot award attorneys' fees. Those judgments or that decision sat with no appeal. That was perfectly appealable on the ruling on attorneys' fees. They could have appealed the denial of motion for leave to amend to assert the antitrust claims or several other. If you look at the proposed amended complaint that's also in the materials submitted to this Court, there were a number of claims that were asserted, some unfair trade practices claims, a RICO claim. The Court denied leave to assert any of those, and Destiny, for reasons known only to itself, elected not to appeal. Rather, nine to ten months later, it filed an action here in California to try and gain what we perceive as a second bite at the apple. And that's just not appropriate. And that's where we come into the doctrine of claim splitting, which is probably the penultimate issue in this case or could certainly resolve all of the issues facing this Court, and that is that where one party seeks leave to amend and is denied leave to amend that, you know, a claim or a case, a complaint to assert new claims, they can't later assert those in separate actions. And claim splitting is a doctrine that applies in connection with race judicata. It borrows similar concepts, but doesn't require a final decision on the merits, doesn't require many of the separate elements in sort of the four-pronged judicata system. Instead, it looks only to what did they seek to assert, and then was that denied. And it prevents exactly this. It prevents protracted litigation, a multiplicity of suits on similar issues, and the risk of inconsistent or duplicative rulings. Counsel for Destiny discussed the malicious prosecution claim. And so I guess going back to where we started, the Ohio court did rule there was no favorable decision on the merits in Destiny's favor. And to Judge Hugg's question, that would resolve the issue both under Ohio law as well as under California law, which is consistent with Judge Fogel's finding below that not having a decision on the merits in its favor, the malicious prosecution claim couldn't stand. Coincidentally, Destiny even made a similar argument that there was no decision on the merits when opposing the race judicata arguments that SGS and Dauphin had raised. Destiny argued that it wasn't proper for the court to apply race judicata because one of the elements there is a decision on the merits. And so Judge Fogel actually took issue with that a little bit at the argument on the motion to dismiss, sort of asking, you know, how it could be one but not the other. The question, I guess, might apply equally to SGS and Dauphin. How can SGS say that there was a favorable decision on the merits, but it wasn't a favorable decision on the merits? And the answer is, well, you can have a favorable decision on the merits, and Destiny simply didn't prevail. Destiny lost all the relief that it asked for. It wasn't able to assert its claims. And as I mentioned earlier, Judge Polster noted that the – they specifically were not a prevailing party, and that issue went unappealed. So your sort of overview of the choice of law issue is that it matters not whether California or Ohio law would apply. They couldn't meet the elements of the requirements of either jurisdiction. That's correct, although we do believe, and we argued in the briefs, that the appropriate analysis for this Court to undertake is to apply Ohio law, because the case arose in Ohio, and much like this Court applied in Ingle v. CBS, the forum state's interest in overseeing its dockets, in regulating how its process is used, whether maliciously or not, is within the purview of that district. And Ohio has specific rules and a specific framework under which malicious prosecution claims may be brought. And it is narrower than California's, but not unlike many other states. And Ohio has decided for policy reasons that when suits are brought within its borders, those will – those suits will be governed by its malicious prosecution standards. So the cross-appellants respectfully submit that Ohio's interest is much greater than California's interest in this case, and is greater than Destiny would suggest to the Court, much like Ingle, where this Court recognized that New York has a specific statute with a heightened pleading burden. That interest outweighed California's more general interest in that case for applying its laws. The question of whether seizure of property is an appropriate element or not is really not before the Court. The law in Ohio is what it is, although Destiny has suggested that maybe that's been criticized. And I do appreciate Destiny's counsel's candor that they haven't pled, nor could they plead a seizure of property in this case. So while the Court in CBS did look at some of the other factors, like the choice of law provision in the agreement, the fact that Ingle was a licensed New York lawyer, et cetera, to find that there was a connection between Ingle and New York, that really only went to the issue of purposeful availment in that case. And having found purposeful availment, this Court found that the interest of New York, New York's malicious prosecution standards would apply to the case. The same is true here. You know, Destiny litigated a case in Ohio for more than two years, or roughly two years. It was briefed, you know, substantially. It was a considerably heavy case, as I've reviewed the record. They're also subject to jurisdiction in Ohio, and have removed a dismissal for lack of jurisdiction. They sell products, you know, throughout the country, as I understand it. And so looking at those facts, there is sufficient connection between Destiny and Ohio to find that Ohio's interest would attach and that there is purposeful availment on the part of Destiny. I'd like to address counsel's point just on the statute of – well, in discussing the compulsory counterclaim, one argument that counsel for Destiny made was that they weren't aware of sufficient facts to – to assert the claim in their original answer in the – in the Ohio action. And I think the Court should be careful not to confuse issues related to an accrual of a claim versus issues related to the triggering of the statute of limitations – well, to the ability to plead the claim. The question of whether or not they were aware of the basis for their antitrust claim is independent of whether or not the claim actually accrued. In situations where a party can allege that there's been willful or fraudulent concealment of facts supporting an antitrust claim, the statute of limitations can be told. That doesn't change when the cause of action accrues. And it also isn't a question of substantively whether it rises to the level of a compulsory counterclaim. The compulsory counterclaim requires only that the claim exists at the time the Respondent files its answer. The claim can exist even if they're not aware of all the facts necessary to prove it. So in that regard, it satisfies the requirement of a compulsory counterclaim. It satisfies the fact it was existing at the time they filed their answer, and it's transactionally related to the underlying patent infringement and invalidity claims that they asserted. Mr. Levere? Yes, Your Honor. I thought I heard your opponent argue that, and he can certainly correct the record if I'm wrong about this, that his client did not focus precisely on the problem, whatever it was, with your client's patent until late in discovery when the inventors, et cetera, were deposed and the facts sort of reached ahead. I hope I have that roughly right. What's your response to that? My response, Your Honor to that? You're arguing that malicious prosecution was a compulsory counterclaim, should have been brought perhaps right out of the box. You're saying they didn't even reach the firm conclusion until near the close of discovery. Well, to Judge Tallman's question earlier, I would agree with Counsel for Destiny grudgingly that the cause of action for malicious prosecution would not arise until the favorable determination on the merits. So as Counsel mentioned, SGS and Dauphin are not alleging that malicious prosecution is a compulsory counterclaim to the underlying patent infringement action. However, abusive process under the Ninth Circuit law, the Pruchero case and the competitive technologies case, finds clearly that an abusive process claim is a compulsory counterclaim in the case alleged to be abusive, and then also on the antitrust issues. To your question, Judge Hawkins, when they discovered, Counsel did argue that they didn't sort of learn about this until they got into the case and dug into discovery. Again, that ties to my earlier point that the cause of action accrues at the time that there is a harm. And at the time there is a harm, an antitrust injury, that's when the cause of action accrues, whether they're aware of it or not. Unless they can prove fraudulent concealment, the statute of limitations starts to run at that point. They can extend the statute of limitation. They cannot change the date on which the claim accrues. Statute of limitations is a separate question for when they can bring their action on their own. Whether the claim exists, even if there's plenty of time left in the statute of limitations, it's still a compulsory counterclaim. Because by asserting a transactionally related claim against Destiny, a plaintiff can foreshorten the time to respond, can force them to come to the court with their arguments and with their claims. Isn't there a Sixth Circuit law that pretty much says that this was permissive? Not that I'm aware of, Your Honor. Well, isn't there a district court or, I'm sorry, a district court decision from the Eastern District of Michigan? That's Sixth Circuit, isn't it? That is in the Sixth Circuit. Which case, Your Honor? P&M Services v. Gup. P&M Services, Your Honor, that was actually decided after the close of the briefing. It's a September 2008 case, which is why it's not cited in the materials. That case, although a Michigan district court case, so not binding on the Northern District, involved a question of a – well, it says that in certain cases they can be permissive. That's correct. And it looks at the analysis that's the fairly typical compulsory counterclaim analysis, you know, are they transactionally related, did it exist at the time, et cetera. And there are many cases, not only in the Eastern District of Michigan, but throughout the country, that look at the question of, you know, whether or not they're related and whether, if it's a case of patent misuse, is it – is there an exception to the Rule 13a compulsory counterclaim? And isn't that Eastern Michigan authority consistent with our case law? I'm not sure, Your Honor. The reason that I hesitate is the Ninth Circuit case upon which they principally rely is the hydronautics case. And that's a case that involved a question of patent misuse. To the extent that there may be a different framework or that there is a different framework for cases asserting patent misuse as opposed to cases where a plaintiff asserts a patent that is invalid or procured by fraud on the patent office, those cases are treated differently fairly consistently throughout the country, including the Federal Circuit that has expressly held in a case after this Court's case in hydronautics that claims alleging antitrust violations based on assertions of an invalid patent are compulsory counterclaims. Isn't that the position that the Second Circuit took in Minuteman? Yes. That is exactly. And the distinction between patent misuse and patent invalidity, which is what is alleged here. Correct. As part and parcel of an antitrust conspiracy to drive competitors from the marketplace. Correct. Correct. And tying into the general notion under Norr Peddington that asserting claims even for bad reasons, even for anti-competitive reasons, so long as they are, you know, tolerable, is not an antitrust violation. That's one of the benefits that goes along with the limited patent monopoly. And, Your Honor, I'm drawing close. I just want to point out the record belies the suggestion that they weren't aware of it at the time or earlier on in the case. They sought leave to amend toward the end of the case, and they also considered bringing an antitrust claim if you look at their original answer and the request for relief on Claim 2, which was somehow deleted from the actual complaint. Thank you. Okay. Thanks for coming in today. We appreciate your argument. Rebuttal. Two points, Your Honor. Number one, with respect to the argument that a claim can be a compulsory con or claim if it exists, but the defendant or the plaintiff doesn't know about it, I just want to point out, and I hope it's clear in the record, at least in the prior art that was discovered during the course of discovery, prior art in the form of patents or publications, things like that. What we're talking about is the testimony that a particular feature of the patent ensued or a couple of particular features in the patent ensued had been used by people in the industry for decades and decades and decades.  And that's covered by the prior art doctrine? Well, that's what would make the patent invalid is the fact that people had been practicing those specific geometries with respect to these end mills for decades, and they themselves, in fact, had been practicing the specific geometries for decades. So why shouldn't we follow the reasoning of the Second Circuit in Minuteman, which I thought did a nice job of explaining the analytical difference between antitrust claim theories that are based on patent invalidity versus patent misuse? Well, patent, I'm afraid I'm not familiar enough with the Minuteman case to say why you should or shouldn't follow it, but I am familiar with the differences between patent misuse and invalidity in the two. And there are different types of invalidity I guess I would go into and take it one step further. But your theory that you wish to assert now in bringing your antitrust claim is that Destiny knew that its patent was invalid because it perpetrated fraud on the Patent and Trademark Office. It then used its invalid patent as a bludgeon, excuse me, SGS rather, it used its invalid patent as a bludgeon to try and force Destiny from the market by bringing a malicious claim in Ohio for patent infringement, and that was part and parcel of an antitrust conspiracy. Correct. And that is more of a misuse of a patent going beyond. That's not what the Second Circuit said in Minuteman. That's why I wondered if maybe Minuteman might help. In our estimation, it's more of a patent misuse because the elements of patent misuse are taking a patent and using it beyond the scope of what's granted by the Patent Office. And we think that includes enforcing a patent that you know is invalid. And with that, Your Honor, we submit it. Okay. Thank you. I think we're done. The case just argued will be submitted for decision. Thank you both very much for your arguments.
judges: Hug, Hawkins, Tallman